UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 19-MJ-187 (TNL)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

JOSIAH RAUL MOSQUEDA,

        Defendant.

FINDING OF PROBABLE CAUSE
AND ORDER FOR DETENTION

This matter came before the Court on April 1, 2019, for a preliminary hearing, pursuant to Rule 5.1 of the Federal Rules of Criminal Procedure, and a detention hearing pursuant to 18 U.S.C. § 3142(f). Defendant Josiah Raul Mosqueda is charged by Complaint with the following: (1) One Count of Production of Child Pornography; (2) Four Counts of Coercion and Enticement; (3) One Count of Transfer of Obscene Material to a Minor; (4) One Count of Receipt of Child Pornography; and (5) One Count of Distribution of Child Pornography.

Defendant was present at the hearing and represented by his retained counsel, Ryan Garry, Esq. The Government was represented by Carol M. Kayser and Lindsey Middlecamp, Assistant United States Attorneys. Prior to the hearing, Melissa Perez, a Pre-Trial Services Officer, interviewed

Defendant and recommended release to home incarceration at the residence of his grandparents in Maple Grove, Minnesota.

Hearing Testimony

### Minnesota BCA Special Agent Rachel Nelson

At the hearing, the Government offered the testimony of Special Agent Rachel Nelson of the Minnesota Bureau of Criminal Apprehension. Agent Nelson testified that she began investigating Defendant in February 2019. As part of her investigation, she obtained a search warrant for Defendant's Facebook profile.

Facebook produced Defendant's Facebook account in response to the search warrant. The account contains more than 40,000 pages, and Agent Nelson is still in the process of reviewing it. Nonetheless, Agent Nelson testified that her review to date revealed that Defendant used Facebook and the internet to communicate with middle-school aged boys. Specifically, Agent Nelson testified that Defendant used the messaging feature of Facebook to solicit minor boys for images and recordings depicting their genitalia. He also used the messaging feature to solicit minor boys for sexual activity. During the course of his communications, Defendant also sent pornography to minor boys, including child pornography and images of Defendant's own erect penis. As recounted by Agent Nelson, Defendant's communications with the boys were explicit and graphic.

Specifically, Agent Nelson testified that on July 6, 2017, Defendant received via Facebook messenger two images depicting the penis of Minor #4, who was born in July 2017. Likewise, she testified that on April 11-12, 2018, Defendant used Facebook messenger to solicit Minor #3, who was then 15 years old, to engage in sexual activity, specifically "rimming." On three separate dates in December 2018, Defendant again used Facebook messenger to solicit Minor #1, who was then 14 years old, to also engage in sexual activity, both "rimming" and "fucking." On November 10, 2018, Defendant used Facebook messenger to employ and persuade Minor #1 to obtain a picture of Minor #2's penis with ejaculate and then forward the depiction to Defendant. Agent Nelson testified that the same day, Defendant sent Minor #1 via Facebook messenger two images of his erect penis. Finally, Agent Nelson testified that on December 15, 2018, Defendant sent Minor #1 via Facebook messenger a masturbation video featuring a 14-15 year old boy.

According to Agent Nelson, the messaging between Defendant and the minors indicated that he knew what he was doing was illegal. In one message, Agent Nelson recounted that Defendant acknowledged, "I mean if I show you you literally cant show anyone. I would go to jail and never be able to teach or work in a school lol." Government Exhibit 1, ¶ 13(c). In another conversation, Defendant wrote, "I have done stuff on Grindr all the time, especially if they

3

are up front about them being under 18. But that is a calculated risk I take." Government Exhibit 8.

Agent Nelson testified that she arrested Defendant on March 27, 2019, at his residence and in conjunction with the execution of a federal search warrant. During the search of Defendant's residence, law enforcement located several packages of what appeared to be used male underwear, packaged individually in Ziplock bags.

Agent Nelson explained that following the execution of the federal search and arrest warrants, law enforcement officers interviewed Minors #1 - #4. The minors confirmed that they had communicated with Defendant via Facebook messenger. Minors #1 and #3 corroborated that Defendant had solicited sex from them. Minor #1 confirmed that Defendant had sent child pornography to him, as well as images of his erect penis. Minor #2 identified the image that Defendant, through Minor #1, used him to produce. He also indicated that he had communicated with Defendant in the summer and fall of 2018 over Snap Chat and sent him images of his genitalia at Defendant's request. Minor #4 also admitted to using Facebook messenger to communicate with Defendant. Minor #4 related that he had sent Defendant several images of his penis at Defendant's request. Minor #4 identified two possible additional victims.

The minors recounted how they knew Defendant. Minors #1 and #2 met Defendant at their charter middle school, where he worked and later

volunteered with the Rainbow Unicorn Club, a student organization. Minor #3 met Defendant on Grindr, a gay dating site. Minor #4 met Defendant at a high school as part of a gay/straight student organization. The two previously unknown victims identified by Minor #4 were also students at his high school and members of the club.

Agent Nelson testified that law enforcement interviewed the two previously unknown minor victims. They both related that approximately two years ago, when they were 16 years old, they communicated with Defendant via Facebook messenger. They confirmed that Defendant solicited from them images of their genitalia, which they transmitted to him via Facebook messenger. One of the minors also indicated that Defendant had offered to buy a used pair of his underwear.

Agent Nelson testified that the forensic review of Defendant's electronics is on-going. The BCA has done a preliminary review of one of Defendant's cell phones. That review revealed Defendant had numerous images and recordings of child pornography on the cell phone. Agent Nelson described some of the child pornography found there, including recordings of an infant being penetrated by an adult penis and a young boy, who appeared to be drugged, being held down and raped. Agent Nelson described that a preliminary review had also been done on the laptop found in Defendant's bedroom. That laptop

contained child pornography recordings and images similar to those found on Defendant's phone.

Finally, Agent Nelson recounted Defendant's general antipathy to law enforcement, as expressed on Facebook. She also indicated that Defendant's Facebook posts indicated that he regularly went to the shooting range and that he thought of himself as an excellent shot with a firearm. Also according to his Facebook posts, Defendant carried a "boot knife" for his protection.

### U.S. Probation Officer Melissa Perez

The Government also called Melissa Perez to testify about her bond report recommending home incarceration at the Maple Grove residence of Defendant's grandparents. Officer Perez testified that in making her recommendation of release, she did not take into account the following: (1) the nature and circumstances of the crime, including that the crimes involved minor victims; (2) the weight of the evidence against Defendant; (3) the rebuttable presumption contained in 18 U.S.C. § 3142(e)(3)(E); or (4) the length of the sentence Defendant faces, including the mandatory minimums applicable here.

Officer Perez testified that Defendant would have access to a landline at his grandparents' residence, which he would be free to use. His grandparents would not be required to monitor his calls. She also testified that Defendant would be allowed to have visitors at the residence, and neither she nor the

6

grandparents could control what the visitors brought to the residence. Officer Perez testified that the grandparents were not required to monitor Defendant at all times and that they were free to leave the house without him, leaving him there alone. Officer Perez related that, if released, Defendant would be required to wear a GPS bracelet that would be monitored by Probation and that would alert if Defendant left the residence. Officer Perez testified that she is aware of instances where defendants have cut off their GPS monitors and fled.

### Defendant's Grandfather

Defendant called his grandfather to testify that he was willing to have Defendant live with him at his Maple Grove residence. He works part-time as an accountant. He testified that he is in his early 70s, as is his wife. He indicated that he does not know if middle-school aged boys live in his neighborhood, although he is confident that none lives in his cul-de-sac. There are schools and parks within walking distance of his residence.

He has no knowledge of Defendant engaging in any of the activities outlined in the Criminal Complaint, and he agrees that Defendant kept that behavior from him. He loves his grandson very much.

### Findings of Fact and Conclusions of Law

1.  The Government established probable cause to believe that Defendant committed the crimes alleged in the Criminal Complaint.

Specifically, there is probable cause to believe that on or about the following dates, Defendant committed the following crimes: (1) knowingly received child pornography on or about July 6, 2017; (2) knowingly induced and persuaded, and attempted to induce or persuade, two separate minors under the age of 16 to engage in sexual activity with him on the following dates: April 11-12, 2018, December 19, 21, and 23, 2018; (3) knowingly produced child pornography on or about November 10, 2018; (4) knowingly transferred obscene material to another individual under the age of 16 on or about November 10, 2018; and (5) knowingly distributed child pornography on or about December 15, 2018.

2.     The crimes alleged in the Criminal Complaint involve minor victims under 18 U.S.C. §§ 2251, 2252(a)(2), and 2422. Consequently, a statutory rebuttable presumption arises "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." *United States v. Abad,* 350 F.3d 793, 797 (8th Cir. 2003) (citing 18 U.S.C. § 3142(e)). The Court finds that Defendant failed to rebut this presumption. Release to home incarceration would not protect the community or assure Defendant's appearance at future proceedings.

3.     Even if Defendant rebutted the presumption, the Court finds that the factors set out in 18 U.S.C. § 3142 weigh heavily in favor of detention. The Criminal Complaint details a number of serious crimes committed against minor victims. This weighs heavily against release. *See* 18 U.S.C. § 3142(g)(1);

8

*Abad,* 350 F.3d at 798 ("crime charged -- sexual activity with a minor – weighs heavily against release").

4. The weight of the evidence here, as detailed by Special Agent Nelson, also weighs against release. *See* 18 U.S.C. § 3142(g)(2). Not only is there evidence from Facebook, reflecting Defendant's own words and actions, but there is also corroboration from the minors with whom Defendant interacted.

5. While Defendant does not have a criminal history, it appears from Agent Nelson's recitation of the evidence that Defendant has been engaged in the subject criminal activity for two years. Further, it appears that Defendant has some mental health issues for which he is under treatment. Based on this, Defendant's history and characteristics do not weigh in favor of release. *See* 18 U.S.C. § 3142(g)(3).

6. The Court finds, based on the evidence presented, that releasing Defendant poses a serious danger to the community. *See* 18 U.S.C. § 3142(g)(3). Defendant had a position of trust within several school communities. Nonetheless, the evidence suggests that he used his position to solicit child pornography from students within those communities. The evidence indicates that he also sought to engage in sexual activity with the students. Testimony and Govt. Ex. 8 show that Defendant was aware that what he was doing was wrong, but he was willing to take risks to get what he wanted.

7. The Court finds that there is no condition, or combination of conditions, that will ensure the safety of any person in the community, as well as Defendant's appearance at future proceedings. Accordingly, the Government's Motion for Detention without bond is GRANTED.

IT IS HEREBY ORDERED that:

1. Defendant is committed to the custody of the United States Marshals for confinement in a correctional facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2. Defendant shall be afforded reasonable opportunity to consult privately with his lawyer; and

3. Upon order of the Court or request by the United States Attorney, the person in charge of the correctional facility in which Defendant is confined shall deliver him to the United States Marshals for the purpose of appearance in connection with all court proceedings.

Dated: April 2, 2019
        Minneapolis, Minnesota

*s/David T. Schultz*
DAVID T. SCHULTZ
United States Magistrate Judge